UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

J & J SPORTS PRODUCTIONS, INC.  )
    Plaintiff,              )
                           )
        v.              )  Civil Action No. 1:16cv620
                           )
LESLY RESTAURANT Inc., d/b/a  )
LESLY RESTAURANT BAR & GRILL,  )
    et al.,            )
    Defendants.       )

## REPORT AND RECOMMENDATION

THIS MATTER comes before the Court on plaintiff's Motion for Default Judgment against defendants Lesly Restaurant.[1] (Dkt. 9.) After a representative for defendant failed to respond to plaintiff's Motion or to appear at the hearing before the undersigned Magistrate Judge on August 26, 2016, the undersigned took this matter under advisement.[2]

## I. INTRODUCTION

### A. Background

Plaintiff J & J Sports Productions, Inc. filed this action against defendant Lesly Restaurant, doing business as Lesly Restaurant Bar & Grill ("defendant"), on June 3, 2016, to

---

[1] Defendant also named a John Doe defendant in the Complaint but does not seek default judgment against that defendant.
[2] The record before the Court includes the Complaint ("Compl.") (Dkt. 1), plaintiff's Motion for Default Judgment ("Mot. Default J.") (Dkt. 9), Plaintiff's Memorandum in Support of its Motion for Default Judgmnent [sic] ("Mem. Supp. Mot. Default J.") (Dkt. 10), the Declaration of J. Bradley Winder, Jr. ("Winder Decl.") (Dkt. 10-5), Plaintiff's Affidavit in Support of Plaintiff's Motion for Default Judgment ("Gagliardi Aff.") (Dkt. 10-4), the Affidavit of Brandon Posey ("Posey Aff.") (Dkt. 12), and all attachments and exhibits submitted with those filings.

recover damages for the unauthorized viewing of the June 7, 2014 closed-circuit telecast of "Miguel Cotto v. Sergio Martinez, WBC Middleweight Championship Fight Program," including preliminary events (collectively "the Event"). (Compl. ¶¶ 6, 13.) The Complaint alleges violations of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. (Compl. ¶ 1.) 47 U.S.C. § 553 grants relief for unauthorized reception of cable services, while 47 U.S.C. § 605 affords a remedy for unauthorized publication or use of communications. See 47 U.S.C. § 553(a)(1); 47 U.S.C. § 605(a). Plaintiff alleges that defendant unlawfully intercepted and exhibited the closed-circuit telecast of the Event, for which plaintiff was an exclusive commercial distributor. (Compl. ¶¶ 6-8, 13-17.) Plaintiff now seeks statutory damages, enhanced damages for willfulness, and attorneys' fees and costs. (Mem. Supp. Mot. Default J. 2-4.)

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have both subject matter and personal jurisdiction over the defaulting party.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, which provides that district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. This

2

dispute arises under Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605.

The Court also has personal jurisdiction over defendant because defendant is a Virginia corporation with its principal place of business in Falls Church, Virginia. (Compl. ¶ 5; Mem. Supp. Mot. Default J. 1.) Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this judicial district because the acts giving rise to the claims occurred in this district. (Compl. ¶ 3; Mem. Supp. Mot. Default J. 1.)

### C. Service of Process

As a general rule, a defendant must be served with the summons and complaint filed with the court. Fed. R. Civ. P. 4. On June 17, 2016, plaintiff's private process server personally served Judit Lizez Hernandez Jimenez, registered agent for defendant Lesly Restaurant Inc., with a copy of the Summons and Complaint. (Dkt. 4.) Therefore, service was proper under Virginia Code § 8.01-299(1) and Federal Rules of Civil Procedure 4(e) and 4(h).

### D. Grounds for Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Defendant has not appeared, answered, or otherwise filed any responsive pleadings in this

3

matter. On otherwise filed any responsive pleadings in this
matter. On August 4, 2016, the Clerk of this Court entered
default as to defendant pursuant to plaintiff's Request for
Entry of Default and Federal Rule of Civil Procedure 55(a).
(Dkts. 7,8.) Plaintiff then filed a Motion for Default Judgment
on August 8, 2016. (Dkt. 9.) The undersigned Magistrate Judge
held a hearing on plaintiff's Motion on August 26, 2016, at
which no representative for defendant appeared. (Dkt. 14.)
Finding this matter uncontested, the undersigned took
plaintiff's Motion under advisement to issue this Report and
Recommendation.

## II. FINDINGS OF FACT

Upon a full review of the pleadings, the undersigned
Magistrate Judge finds that plaintiff has established the
following facts.

Plaintiff is a California corporation with its principal
place of business in Campbell, California. (Compl. ¶ 4.)
Defendant is a Virginia corporation, doing business as Lesly
Restaurant, Inc., with its principal place of business at 306
Hillwood Avenue, Falls Church, Virginia 22046. (Id. ¶ 5; Mem.
Supp. Mot. Default J. 1.)

Plaintiff is a distributor of sports and entertainment
programming who paid substantial fees to enter into a closed-
circuit television license agreement ("the License Agreement")

to exhibit the June 7, 2014 closed-circuit telecast of "Miguel Cotto v. Sergio Martinez, WBC Middleweight Championship Fight Program," including preliminary events. (Compl. ¶ 6; Gagliardi Aff. ¶ 3.) Through its License Agreement, plaintiff acquired the right to distribute the Event in Virginia. (Compl. ¶¶ 7-8.) As such, any business in Virginia seeking to show the Event was required to pay plaintiff for the rights to broadcast the Event. (Id.; Gagliardi Aff. ¶ 8.) The transmission of the Event was electronically coded and had to be decoded with electronic equipment in order for a proper signal to be received and televised by an establishment. (Compl. ¶ 10; Gagliardi Aff. ¶ 9.) This capability to decipher the code and/or receive appropriate satellite coordinates for televising the Event was available for purchase once an establishment contracted with plaintiff. (Compl. ¶¶ 11-12.)

Plaintiff has retained auditors and law enforcement personnel as part of plaintiff's campaign to identify signal pirates and pursue litigation against commercial establishments found to be pirating plaintiff's programming. (Gagliardi Aff. ¶¶ 4-6.) Plaintiff provided participating auditors and law enforcement agencies with a confidential list of customers who were authorized to broadcast the Event. (Id. at ¶ 6.) On June 7, 2014 at 10:43pm, Brandon Posey, an investigator, entered defendant's Lesley Restaurant Bar & Grill and observed the third

round of the Event playing on the television. (Posey Aff. 1; Gagliardi Aff. ¶ 7.) Mr. Posey counted the number of people in the establishment and submitted an affidavit based on his findings. (Posey Aff. 1.) He counted 30 patrons in defendant's establishment. (Id.)

Based on Mr. Posey's investigation, plaintiff concluded that defendant intercepted and/or received the interstate communication of the Event and enabled patrons to view the Event without a license from plaintiff. (Compl. ¶¶ 13-17; Mem. Supp. Mot. Default J. 2; Gagliardi Aff. ¶ 7.) Consequently, plaintiff claims that defendant avoided lawful payment to its company by misappropriating plaintiff's licensed exhibition of the Event while infringing upon plaintiff's exclusive rights. (Compl. ¶¶ 13-17; Mem. Supp. Mot. Default J. 2.)


### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Where a defendant has defaulted, the facts set forth in the plaintiff's complaint are deemed admitted. Before entering default judgment, however, the Court must evaluate the plaintiff's complaint to ensure that the complaint properly states a claim. GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003). As such, it is appropriate to evaluate plaintiffs' claim against the standards of Federal Rule of Civil Procedure 12(b)(6).

Plaintiff first alleges unauthorized reception of cable services by defendant in violation of 47 U.S.C. § 553 ("Section 553"). (Compl. ¶¶ 18-24; Mem. Supp. Mot. Default J. 2-3.) Plaintiff is suing as a "person aggrieved" by a violation of Section 553, which provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1); see also id. § 553(c)(1). Plaintiff's Complaint establishes that defendant intercepted and/or received the interstate communication of the Event. (Compl. ¶ 13; Mem. Supp. Mot. Default J. 2-3; Gagliardi Aff. ¶ 7; Posey Aff. 1.) Additionally, defendant did not pay plaintiff for the rights to broadcast the Event and therefore defendant was not authorized to receive the Event. (Compl. ¶¶ 11, 17; Mem. Supp. Mot. Default J. 2-3; Gagliardi Aff. ¶ 7.) Furthermore, plaintiff has established that the closed-circuit broadcast of the Event cannot be intercepted innocently or accidentally. (Gagliardi Aff. ¶ 9.) Therefore, plaintiff has sufficiently stated a claim under Section 553.

Plaintiff also alleges unauthorized publication or use of radio and satellite communications by defendant in violation of 47 U.S.C. § 605 ("Section 605"). (Compl. ¶¶ 25-32; Mem. Supp.

Mot. Default J. 3.) Plaintiff is suing as a "person aggrieved"
by a violation of Section 605, which defines a "person
aggrieved" to include "any person with proprietary rights in the
intercepted communication." 47 U.S.C. § 605(d)(6). Pursuant to
the License Agreement, plaintiff maintained proprietary rights
in the communication of the Event. (Compl. ¶ 30; Gagliardi Aff.
¶ 3.)

    Section 605 further provides,

    No person not being authorized by the sender shall
    intercept any radio communication and divulge or publish
    the . . . contents . . . of such intercepted communication
    to any person. No person not being entitled thereto shall
    receive or assist in receiving any interstate . . .
    communication by radio and use such communication . . . for
    his own benefit or for the benefit of another not entitled
    thereto.

    47 U.S.C. § 605(a). When programming is transmitted or
intercepted over both cable and satellite mediums, both Sections
553 and 605 apply. Int'l Cablevision, Inc. v. Sykes, 75 F.3d
123, 130-33 (2d Cir. 1996) (noting that Section 553 "applies to
any transmissions via cable, whether or not they originate as
radio transmissions" and that Section 605 applies to "the
interception of cable-borne, as well as over-the-air"
broadcasts). Here, as noted above, plaintiff has established
that defendant intercepted, without authorization, the
interstate communication of the Event. (Compl. ¶¶ 11, 13; Mem.
Supp. Mot. Default J. 2-3; Gagliardi Aff. ¶ 7, 9.) Defendant

then divulged that communication to patrons of the Lesly Restaurant. (Compl. ¶¶ 13-17; Mem. Supp. Mot. Default J. 2-3; Posey Aff. 1-2; Gagliardi Aff. ¶ 7.) Therefore, plaintiff has sufficiently stated a claim under Section 605.

## IV. REQUESTED RELIEF

Plaintiff alleges that defendant intercepted, received, published, divulged, displayed, and/or exhibited the Event for purposes of direct or indirect commercial advantage, in violation of Section 705 of the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605. Thus, plaintiff moves this Court to enter default judgment against defendant and award $10,000.00 in statutory damages, enhanced statutory damages due to willfulness, and reasonable attorneys' fees and costs. (Mem. Supp. Mot. Default J. 4.)

In support of its claim for damages, plaintiff submitted the Gagliardi Affidavit and the Winder Declaration. Although plaintiff has set forth the elements of liability under both Sections 553 and 605, courts have held that recovery under both sections is improper. See, e.g., Kingvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Colo. 2008); Time Warner Cable of New York City v. Sanchez, 2003 U.S. Dist. LEXIS 12954, at *8 (S.D.N.Y. July 8, 2003). Plaintiff's Motion for Default Judgment does not seek a double recovery, but it does

not make clear under which section plaintiff seeks damages.
(Mem. Supp. Mot. Default J. 4.) The undersigned will evaluate
plaintiff's claim for damages under Section 605 as it provides
for a higher potential award. See Int'l Cablevision, Inc. v.
Sykes, 75 F.3d 123, 127 (2d Cir. 1996).

As a "person aggrieved" by a violation of Section 605,
plaintiff may be granted injunctive relief and/or damages, and
must be granted reasonable attorneys' fees and costs. 47 U.S.C.
§ 605(e)(3)(B)(i)-(iii). The Court may award either actual
damages suffered as a result of the violation and any profits
attributable to the violation, or statutory damages of not less
than $1,000.00 and not more than $10,000.00. Id. §
605(e)(3)(C)(i)(I)-(II). Plaintiff's Complaint sought statutory
damages in the amount of $10,000.00 pursuant to 47 U.S.C. §
605(e)(3)(C)(i)(II), additional damages for willfulness in the
amount of $100,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii),
and full costs and expenses, including reasonable attorneys'
fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Compl. ¶ 32.)
In moving for a default judgment, plaintiff now seeks statutory
damages in the amount of $10,000.00, additional damages for
willfulness in the maximum amount permitted, and attorneys' fees
and costs. (Mem. Supp. Mot. Default J. 4; Gagliardi Aff. ¶¶ 13,
18; Winder Decl. ¶¶ 9,10.)

10

## A. Statutory Damages

Plaintiff seeks statutory damages in the amount of $10,000.00. Courts have employed two general approaches to calculating statutory damages: either by basing the damages calculation on the number of patrons in an establishment during the unauthorized broadcast, or by utilizing a flat damage amount usually based on the unpaid sublicense fee. See J & J Sports Prods., Inc. v. Brutti's LLC, Civil Action No. 2:14cv269, 2014 U.S. Dist. LEXIS 177304, at *18 (E.D. Va. Dec. 23, 2014); see also Joe Hand Promotions, Inc. v. Jimmagan's Inlet, Inc., C/A No. 4:10-801-TLW-SVH, 2010 U.S. Dist. LEXIS 136967, at *12-13 (D.S.C. Oct. 1, 2010) (awarding five times the license fee for the program); Joe Hand Promotions, Inc. v. Bougie, Inc., Case No. 1:09-cv-00590 (TSE/IDD), 2010 U.S. Dist. LEXIS 43583, at *15-16 (E.D. Va. Apr. 12, 2010) (multiplying the number of customers present by a reasonable rate of $100.00 per customer); Kingvision Pay-Per-View, Ltd. v. Gutierrez, 544 F. Supp. 2d 1179, 1184 (D. Colo. 2008) (awarding a flat amount of $5,000.00).

This Court has followed both approaches to calculating damages. In Joe Hand Promotions, Inc. v. Veltsistas, LLC, an average of 50 patrons were present for the unlicensed broadcast of a pay-per-view event. Civil Action No. 1:10cv1442 (JCC/TRJ), 2011 U.S. Dist. LEXIS 135823, at *6-7 (E.D. Va. Oct. 21, 2011).

This Court awarded $5,000.00 in statutory damages by multiplying the average number of patrons present by $100.00 per patron. Id. at *7. In another case, where an average of 46 patrons observed the unauthorized broadcast of the pay-per-view event, the Court felt that an award per customer would not sufficiently deter future unlawful conduct and instead granted a flat award of $2,200.00. J & J Sports Prods., Inc. v. Lara Sport House Corp., Case No. 1:10-cv-01369 (TSE/IDD), 2011 U.S. Dist. LEXIS 104818, at *16-17 (E.D. Va. Aug. 26, 2011).

Here, plaintiff has not submitted data showing the amount of any profits that defendant may have acquired by illegally broadcasting the Event. The sublicense fee plaintiff charges to commercial establishments legally purchasing broadcast rights varies based on the capacity of the establishment and the event being licensed. (Gagliardi Aff. ¶ 8.) Exhibit 1 to the Gagliardi Affidavit shows a price of $800.00 for bars or restaurants with an occupancy capacity of 1-100 to broadcast the Event. (Gagliardi Aff. Ex. 1.) As such, the undersigned finds that an award of $3,000.00, calculated as $100.00 multiplied by the approximately 30 patrons that were present, is appropriate in this case.

## B. Enhanced Statutory Damages

If the Court finds that defendant's violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain" the Court may increase the amount of actual or statutory damages by an amount of not more than $100,000.00. 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff's Complaint sought enhanced damages for willfulness in the amount of $100,000.00. In the Motion for Default Judgment, plaintiff similarly seeks that maximum amount of enhanced damages.

Courts have evaluated whether enhanced damages are appropriate by assessing factors such as "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View Ltd. v. Villalobos, 554 F. Supp. 2d 375, 383 (E.D.N.Y. 2008). Courts have also considered "the number of patrons who viewed the unlawful broadcast, the establishment's proximity to a population center, and the effect the damage award might have on the defendant's ability to remain in business." Joe Hand Promotions, Inc. v. Citibars, Inc., Case No.: 2:11cv58, 2012 U.S. Dist. LEXIS 18500, at *19 (E.D. Va. Feb. 8, 2012). Additionally, courts routinely decline to award the maximum in enhanced damages and generally

award significantly less. J & J Sports Prods., Inc. v. Brutti's
LLC, Civil Action No. 2:14cv269, 2014 U.S. Dist. LEXIS 177304,
at *21 (E.D. Va. Dec. 23, 2014). However, the enhanced damages
awarded in this District against non-repeat offenders vary
greatly. See, e.g., id. at *21-22 (citing cases awarding
$6,000.00, $12,000.00, $27,000.00, and $100,000.00, and
ultimately awarding $25,000.00).

Plaintiff argues that signal piracy is per se intentional
because it cannot occur without the intentional modification of
electronic equipment, the removal of devices designed to prevent
unauthorized exhibition, or other willful acts. (Gagliardi Aff.
¶¶ 9, 13.) Plaintiff states that it has lost several millions of
dollars due to signal piracy, and that the widespread nature of
the piracy problem has resulted in higher costs of services to
lawful commercial and residential cable and satellite consumers.
(Id. at ¶ 11.) Plaintiff also adds that it believes that the
persistent signal piracy results in part from a perceived lack
of consequences. (Id. at ¶ 12.) Plaintiff therefore urges the
Court to grant the maximum amount of enhanced damages permitted.
(Id. at ¶ 13.)

Defendant's violation of Section 605, taking place in a
commercial establishment rather than a residence, was committed
for purposes of direct or indirect commercial advantage. The
pleadings make clear that such interception cannot be done

14

accidentally or innocently. An award of some enhanced damages is therefore appropriate as a deterrent. However, the maximum allowable enhanced damages award is inappropriate when the evidence before the Court suggests that defendant's commercial gain resulting from the unauthorized broadcast was likely not significant.

Here, there were approximately 30 patrons in defendant's Lesly Restaurant at the time of the unauthorized broadcast. (Stephens Aff. 2.) The Lesly Restaurant is also located in Falls Church, a generally populous area. (Compl. ¶ 5; Gagliardi Aff. ¶ 18.) However, plaintiff has not provided any evidence of repeated violations, nor has plaintiff shown that defendant advertised the unauthorized broadcast. Further, plaintiff's investigator did not pay a cover charge to enter the Lesly Restaurant and there is no evidence that defendant charged a premium for food or drink.[3] (Posey Aff. 1-2.)

The undersigned finds that defendant's actions were willful and done for direct or indirect commercial advantage and that plaintiff is thus entitled to enhanced damages in the amount of $10,000.00. This award represents an amount in the middle of the spectrum of enhanced damages awarded by courts in this District

---

[3] Plaintiff has argued, though, that signal pirates generally do not advertise except possibly by word-of-mouth, that it is unlikely that signal pirates would charge a premium for food and drink because even establishments that lawfully pay the sublicense fee do not charge such a premium, and most signal pirates also do not charge a cover fee because that would defeat the competitive advantage of pirating the broadcast. (Gagliardi Aff. ¶¶ 15-17.)

considering similar facts, including number of patrons viewing the broadcast. . See <u>Joe Hand Promotions, Inc. v. Veltsistas, LLC</u>, Civil Action No. 1:10cv1442 (JCC/TRJ), 2011 U.S. Dist. LEXIS 135823, at *7-9 (E.D. Va. Oct. 21, 2011) (awarding $5,000.00); <u>J & J Sports Prods., Inc. v. Lara Sport House Corp.</u>, Case No. 1:10-cv-01369 (TSE/IDD), 2011 U.S. Dist. LEXIS 104818, at *18-19 (E.D. Va. Aug. 26, 2011) (awarding $15,000.00). The combination of $3,000.00 in statutory damages and $10,000.00 in enhanced damages both compensates plaintiff and serves as a deterrent to future signal piracy by defendant and others.

### C. Attorneys' Fees and Costs

Plaintiff also seeks to recover attorneys' fees and costs. Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." In support of its request, plaintiff submitted the Declaration of J. Bradley Winder, which details the work done, hours expended, and total amount due. (Dkt. 10-5.)

Mr. Winder declared that he anticipated expending a total of 6.5 hours of his time at a rate of $300.00 per hour, totaling $1,950.00 in legal fees. (Winder Decl. 3.) Mr. Winder also included anticipatory billings of six hours for preparing for and traveling to the hearing on the Motion for Default Judgment from his office in Richmond, Virginia, increasing the attorney

16

fees by $1,800.00. (Id.) Plaintiff additionally seeks $676.77 in costs, comprised of the filing fee, service of process fees, copying/printing fees, and postage. (Id.) The undersigned has reviewed Mr. Winder's declaration and finds that the requested fees and costs are reasonable compensation for the time expended to enforce plaintiff's rights. Thus, the undersigned recommends that plaintiff be awarded $4,426.77.00 in attorneys' fees and costs.

## V. RECOMMENDATION

For the reasons outlined above, the undersigned Magistrate Judge recommends that default judgment be entered in favor of plaintiff J & J Sports Productions, Inc. and against defendant Lesly Restaurant in the total amount of $17,426.77, consisting of $3,000.00 in statutory damages, $10,000.00 in enhanced damages, $3,750.00 in attorneys' fees, and $676.77 in costs.

VI. <u>NOTICE</u>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service.  Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and to defendant at the following address:

> Judit Lizez Hernandez Jimenez
> Registered Agent for Lesly Restaurant, Inc.
> Lesly Restaurant Inc.
> 306 Hillwood Avenue
> Falls Church, VA 22046

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

September 28, 2016
Alexandria, Virginia